United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| PI-NET INTERNATIONAL, INC., | ) | Case No. 5:12-cv-04958-PSG |
| Plaintiff, | ) | Case No. 5:12-cv-04959-PSG |
| | ) | |
| v. | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTION TO DISMISS CASES AS** |
| FOCUS BUSINESS BANK, | ) | **MOOT** |
| | ) | |
| Defendant. | ) | **(Re: Docket No. 83, Case No. 5:12-cv-** |
| | ) | **04958)** |
| | ) | **(Re: Docket No. 78, Case No. 5:12-cv-** |
| PI-NET INTERNATIONAL, INC., | ) | **04959)** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIDGE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

As this court previously noted, these cases involve the "unique" and "often puzzling"
ability of patent cases to "proceed in any number of different venues, often at the same time."[1]
After Plaintiff Pi-Net International, Inc. brought suit against Defendants Focus Business Bank and
Bridge Bank, N.A. for patent infringement, the Patent and Trademark Office initiated *inter partes*

---

[1] *See* Case No. 5:12-cv-05958: Docket No. 58 at 2.

United States District Court
For the Northern District of California

review of the patents-in-suit.[2]  Persuaded that a stay was proper in light of these parallel proceedings, the court entered an order staying the cases against Defendants pending resolution of the IPR proceedings.[3]  During this stay, a new complicity was added to these cases when Pi-Net executed agreements transferring ownership of the asserted patents to its president Dr. Lakshmi Arunachalam.[4]

Claiming that Pi-Net now lacks standing to sue for infringement of the asserted patents, Defendants move for the court to lift the stay and dismiss these cases for mootness.[5]  Because these cases became moot upon Pi-Net's assignment of its rights to the asserted patents, the court lifts the stay and GRANTS Defendants' motion to dismiss.

## I.

A party may file a motion under Fed. R. Civ. P. 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction.  "In considering a Rule 12(b)(1) motion, the [c]ourt 'is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.'"[6]  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."[7]

"If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed."[8]  To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and

---

[2] *See id.* at 3-4.

[3] *See* Case No. 5:12-cv-04985: Docket No. 77; Case No. 5:12-cv-04959: Docket No. 72.

[4] *See* Case No. 5:12-cv-04985: Docket Nos. 83-5, 83-6.

[5] *See* Docket No. 83, Case No. 5:12-cv-04959: Docket No. 78.

[6] *See Moran v. HSBC Bank USA, N.A.*, Case No. 5:14-cv-00633-LHK, 2015 WL 139705 at *2 (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)).

[7] *See Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) (internal citations omitted).

[8] *See Moran*, 2015 WL 139705 at *2 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)).

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

(b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[9]  "The injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[10]  "In such cases, the 'standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'"[11]

Standing in a patent infringement derives from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent."[12]  The term "patentee" includes "the patentee to whom the patent was issued" as well as those who are "successors in title to the patentee" because they hold legal title to the patent.[13]  "A patent grant bestows the legal right to exclude others from making, using, selling or offering to sell the patented invention in the United States, or importing the invention…Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights."[14]

"[S]tanding is to be determined as of commencement of suit."[15]  In contrast, "[t]he question of whether the [c]ourt *loses* jurisdiction over a case where a plaintiff has standing at the outset…is

---

[9] *See Nuclear Information & Resource Service v. Nuclear Regulatory Com'n*, 457 F.3d 941, 949 (9th Cir. 2006) (internal citations omitted).

[10] *See Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1171 (N.D. Cal. 2012) (quoting *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010)).

[11] *See id.* (quoting *Edwards*, 610 F.3d at 517).

[12] *See* 35 § U.S.C. 281.

[13] *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (internal citations omitted).

[14] *See id.* (internal citations omitted).

[15] *See Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992) (plurality opinion)); *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005) ("Standing to sue is

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   properly characterized as one of mootness."[16]  Generally, "[t]he doctrine of mootness can be

2   described as 'the doctrine of standing set in a time frame: The requisite personal interest that must

3   exist at the commencement of the litigation (standing) must continue throughout its existence

4   (mootness)."[17]  Although "long-recognized exceptions to mootness" exist, courts may not "retain

5   jurisdiction over cases in which one or both of the parties plainly lack a continuing interest."[18]

6          Pi-Net alleges that Defendants infringe U.S. Patents Nos. 5,987,500 and 8,108,492.[19]  "The

7   patents are generally directed to a method and apparatus for performing real-time, two-way

8   transactional capabilities on the Web."[20]  The '500 and '492 patents issued to Arunachalam in 1999

9   and 2012, respectively.[21]  Both patents were later assigned to Pi-Net.[22]

10         In 2012, Pi-Net brought suit against Defendants for infringement of the '500 and '492

11   patents.[23]  Pi-Net also asserted these patents against "various financial institutions in approximately

12   twenty-eight separate actions."[24]

13         SAP America, Inc. then initiated IPR proceedings at the PTO challenging the validity of the

14   patents-in-suit.[25]  The court entered an order staying these cases pending resolution of those

---

a threshold requirement in every federal action" which "must be present at the time the suit is
brought.") (internal citations omitted).

[16] *See Qimonda AG v. LSI Corp.*, 857 F. Supp. 2d 570, 574 (E.D. Vir. 2012) (emphasis in original).

[17] *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 520 U.S. 167, 189 (2000)
(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

[18] *See id.* at 190-92.

[19] *See* Case No. 5:12-cv-04958: Docket No. 1 at 5-6; Case No. 5:12-cv-04959: Docket No. 1 at 4-6.

[20] *See* Case No. 5:12-cv-04958: Docket No. 58 at 3 (internal citations omitted).

[21] *See* Docket No. 1 at 2-3.

[22] *See id.*; *see also* Docket Nos. 83-2, 83-3.

[23] *See* Docket No. 1; Case No. 12-cv-04959: Docket No. 1.

[24] *See* Case No. 5:12-cv-04958: Docket No. 58 at 4.

[25] *See id.*

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

United States District Court
For the Northern District of California

proceedings, "conditioned on Defendants' agreement to be estopped from raising any invalidity reference, or combination of references, that had been presented to the PTO in SAP's IPR petitions, including those for which the PTO declined to institute review."[26]

While this stay was in place, Pi-Net, through its President Arunachalam, executed two assignment agreements assigning to Arunachalam "the entire right, title and interest in and to [the asserted patents], including all right to sue for past infringement" and entitling Arunachalam to "retain any monetary damages, settlements, royalties or recovery" recovered or obtained in such suits taken by Arunachalam at her own expense.[27]

Arguing that these assignments divested Pi-Net of standing to pursue these cases, Defendants now move for the court to lift the stay and to dismiss these cases with prejudice as moot.[28]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

The issue is whether the court should lift the stay and grant Defendants' motion to dismiss these cases for lack of subject matter jurisdiction. Because these cases became moot when Pi-Net lost standing to sue for infringement of the asserted patents, the court lifts the stay and grants Defendants' motion to dismiss.

---

[26] *See* Docket No. 77 at 2; Case No. 5:12-cv-04959: Docket No. 72 at 2. The court originally conditioned the stay "on each defendant's consent to be estopped from raising any invalidity defense that SAP raised or reasonably could have raised in the IPR proceedings." *See* Case No. 5:12-cv-04959: Docket No. 58 at 10. The court later modified this condition. *See* Docket No. 74 at 4.

[27] *See* Case No. 5:12-cv-04958: Docket No. 83-5 at §§ 1-2; Docket No. 83-6 at §§ 1-2. Pi-Net and Arunachalam also executed an accession agreement in which Arunachalam acknowledged that she is bound by agreements that resolved prior litigation relating to the patents-in-suit. *See* Docket No. 83-4 at § 1.

[28] *See* Docket No. 83 at 1; Case No. 5:12-cv-04959: Docket No 78 at 1.

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

United States District Court
For the Northern District of California

1   ***First***, the court lifts the stay for the purpose of deciding whether to dismiss these cases.

2   Whether to stay litigation "pending the PTO's review of a patent involved in the lawsuit is within

3   the court's discretion."[29]  "The same court that imposes a stay of litigation has the inherent power

4   and discretion to lift the stay."[30]  "The court may lift the stay if the circumstances warranting its

5   imposition have since changed significantly."[31]

6   Pi-Net's contention that a lift of the stay is "unwarranted" lacks merit.[32]  The court

7   previously concluded that imposing a stay made sense under the factors outlined in *Telemac Corp.*

8   *v. Teledigital, Inc.*[33] in part because the PTO's determinations regarding the "vast majority of the

9   asserted claims in this litigation" were "likely to simply the issues before the court."[34]  Pi-Net is

10  correct that the IPR proceedings have not concluded because Arunachalam filed a notice of appeal

11  with the Patent Trial and Appeal Board indicating her intention to appeal its decision regarding the

12  patents-in-suit to the Federal Circuit.[35]  However, as stated below, the court has determined that Pi-

13  Net no longer has standing to pursue the claims asserted in this litigation.  Accordingly,

14  "circumstances have changed such that the court's reasons for imposing the stay no longer exist"

15  because the court can completely resolve these cases by granting Defendants' motion to dismiss.[36]

16  _____

17  [29] *See* Case No. 5:12-cv-04958: Docket No. 58 at 6 (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).

18  [30] *See Cascades Computer Innovation LLC v. RPX Corp.*, Case No. 12-cv-1143-YGR, 2015 WL 1383818, at *1 (N.D. Cal. Mar. 23, 2015) (internal citations omitted).

19

20  [31] *See id.* (internal citations omitted).

21  [32] *See* Docket No. 84 at 2.

22  [33] *See* Docket No. 58 at 6 ("Courts traditionally consider the following three, non-exhaustive factors in determining whether to stay a case pending the PTO's review of a patent in suit: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will

23  simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.") (citing *Telemac Corp. v.*

24  *Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006)).

25  [34] *See* Docket No. 74 at 3.

26  [35] *See* Docket No. 90 at 1; *see also* Docket No. 84 at 2.

27

28  [36] *See Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002).  Pi-Net's contention that a lift of the stay is improper because Defendants requested the stay "in the first

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

United States District Court
For the Northern District of California

1    **Second**, Pi-Net rendered these cases moot when it assigned away its rights to the asserted

2    patents.  A "patentee who holds all the exclusionary rights and suffers constitutional injury in fact

3    from infringement" as well as an assignee to whom the patentee has transferred "all substantial

4    rights to the patent" have standing to sue for patent infringement.[37]  In contrast, "those that hold

5    less than all substantial rights to the patent and lack exclusionary rights under the patent statutes to

6    meet the injury in fact requirement" lack constitutional standing because "[t]hey are not injured by

7    a party that makes, uses or sells the patented invention because they do not hold the necessary

8    exclusionary rights."[38]  Accordingly, "if a patentee transfers all substantial rights to a patent, the

9    transferee becomes the effective patentee and is the only party who may sue for infringement."[39]

10    Like the plaintiff in *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, Pi-Net divested itself of

11    standing to sue for infringement by assigning the asserted patents to Arunachalam.[40]  In *Schreiber*

12    *Foods*, the plaintiff owned the asserted patent at the time it filed suit against the defendant but

13    assigned the asserted patent and the right to sue for past infringement to its subsidiary while the

14    case was being litigated.[41]  The court held that although the plaintiff retained a non-exclusive

15    license to practice the patent, "there was no question" that the plaintiff had "lost its personal stake

16    in the outcome" of the litigation once the assignment was complete.[42]  Accordingly, the court

17    reasoned that "the case became moot" because the "plaintiff had "lost standing to sue for

18    infringement."[43]

---

19
20    instance" is also unavailing because Defendants made this request before Pi-Net assigned the
      patents to Arunachalam. *See* Docket No. 84 at 2; *see also* Docket No. 85 at 2.

21    [37] *See Morrow*, 499 F.3d at 1340.

22    [38] *See id.* at 1340-41.

23
24    [39] *See Advanced Audio Devices, LLC v. Bay Consumer, Inc.*, Case No. 10-c-7699, 2011 WL
      6016242, at *2 (N.D. Ill. Dec. 2, 2011) (citing *Vaupel Textilmaschinen KG v. Meccanica Euro*
      *Italia S.P.A.*, 944 F.2d 870, 875-76 (Fed. Cir. 1991)).

25    [40] *See* 402 F.3d1198 (Fed. Cir. 2005).

26    [41] *See id.* at 1200, 1202.

27    [42] *See id.* at 1202-3.

28    [43] *See id.* at 1203.

7

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

Similar to the plaintiff in *Schreiber Foods*, here Pi-Net had standing to sue for patent infringement at the onset of these cases because it owned both of the asserted patents at the time it initiated these suits.  However, as stated above, Pi-Net later executed agreements which assigned to Arunachalam "the entire right, title and interest in and to the [p]atent[s], *including all right to sue for past infringement*."[44]  Thus, like the plaintiff in *Schreiber Foods*, Pi-Net has assigned away all substantial rights in the asserted patents, including the right to sue for past infringement.[45]  Pi-Net therefore lacks legal capacity to maintain these actions because it does not hold "all substantial rights" to the asserted patents and thus is "not injured by a party" that practices the patented inventions.[46]

In light of Pi-Net's lack of a legally cognizable interest in these cases, the assignment agreements' purported grant to Arunachalam of the right to sue for past infringement "in the name of [Pi-Net] or in [her] own name" is insufficient to confer standing on Pi-Net.[47]  In support of its position that these grants are "valid and enforceable" Pi-Net claims that "[p]arties have the freedom to contract" and that Pi-Net and Arunachalam each have "an interest in the litigation."[48]  However, Pi-Net's attempt to contract around Article III's standing requirement is unavailing because "[s]tanding to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue and

---

[44] *See* Docket No. 83-5 at § 1 (emphasis added); *see also* Docket No. 83-6 at § 1 (emphasis added).

[45] *See* 402 F.3d at 1202-3.

[46] *See Morrow*, 499 F.3d at 1340-41. The Federal Circuit held that "the mootness [in *Schreiber Foods*] was only temporary" because the plaintiff "regained its stake in the litigation when it reacquired the [asserted] patent before the entry of judgment." *See* 402 F.3d at 1203.  As a result, the Federal Circuit reversed the district court's judgment of dismissal in part because "[t]he jurisdictional defect that had existed was cured before the entry of judgment." *See id.* at 1204, 1207.  In contrast, here dismissal for mootness is proper because there is no indication that Pi-Net has cured the jurisdictional defect by reacquiring the patents-in-suit.

[47] *See* Docket No. 83-5 at § 2; *see also* Docket No. 83-6 at § 2.

[48] *See* Docket No. 84 at 2.

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

United States District Court
For the Northern District of California

1    who will be bound by judgments."[49]  Accordingly, "[a] patentee may not give a right to sue to a

2    party who has no proprietary interest in the patent."[50]  Because Pi-Net lacks a proprietary interest

3    in the asserted patents, Pi-Net and Arunachalam cannot confer a right to sue to Pi-Net by private

4    agreement that it lacks under federal law.

                                          **IV.**

6            Any attempt by Pi-Net to amend its complaints in order to establish standing would be an

7    exercise in futility because Pi-Net has divested itself of a legally cognizable interest in these cases

8    by virtue of its own actions.  Accordingly, the court GRANTS Defendants' motion to dismiss both

9    of these actions without leave to amend.  Because it is "plainly unlikely" that Pi-Net will be able to

10   establish standing, this dismissal is with prejudice as to Pi-Net's right to pursue these actions, but

11   does not preclude "the filing of a new action by a party with proper standing."[51]

13   **SO ORDERED.**

14   Dated: April 6, 2015

                                          *Paul S. Grewal*
                                          PAUL S. GREWAL
                                          United States Magistrate Judge

---

[49] *See Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) ("Whether a party has standing to sue in federal court is a question of federal law.") (internal citations omitted).

[50] *See Prima Tek*, 222 F.3d at 1381 (quoting *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed. Cir. 1995)).

[51] *See Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) ("Ordinarily, dismissal for lack of standing is without prejudice.  On occasion, however, a dismissal with prejudice is appropriate, especially where it is plainly unlikely that the plaintiff will be able to cure the standing problem.") (internal citations omitted); *see also University of Pittsburgh v. Varian Medical Systems, Inc.*, 569 F.3d 1328, 1333 (Fed. Cir. 2009) ("[A] dismissal for lack of standing should generally be without prejudice so as to permit the filing of a new action by a party with proper standing.").

Case Nos.: 5:12-cv-04958-PSG, 5:12-cv-04959-PSG.
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CASES AS MOOT

United States District Court
For the Northern District of California